IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| BRIAN KOPATZ | § | |
| v. | § | CIVIL ACTION NO. 5:22cv156-RWS-JBB |
| JOHN DOE, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Brian Kopatz, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The case has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Plaintiff's Complaint**

Plaintiff's second amended complaint (Dkt. No. 19) is the operative pleading in the case. In his second amended complaint, Plaintiff sues Texas Governor Gregg Abbott, TDCJ Executive Director Bryan Collier, the Director of the State Classification Committee in Huntsville, Connally Unit senior practice manager Debra Gloor, Lt. Brandi Curl of the Telford Unit, an unknown physician at the Telford Unit who was on duty on December 9, 2020, Health Services Division Director Dr. Lannette Linthicum, and an unknown classification officer at the Connolly Unit.

Plaintiff complains that the prison is short-staffed, which he says reduces the safety and security of inmates and causes increased availability of illegal drugs as well as assaults and murders. He says that Governor Abbott is doing nothing to fix the problem. According to Plaintiff, the shortage of guards is also causing reduced opportunities for outdoor recreation.

Plaintiff complains that Executive Director Bryan Collier should construct procedures for inmates with disabilities such as himself who need trade school and a unit with single cells, but who have a disease such as folliculitis or fibrosis. He complains that assaults are out of control but concedes that Collier can only do so much. Plaintiff states that at some unspecified time, there was a 40-day lockdown but drugs were still coming into the facility, which he says means that guards were bringing in the drugs.

Plaintiff argues that Director Collier should consider allowing inmates to choose their own cellmates. He claims that the State Classification Committee has a duty to classify him as suffering from autism and dyslexia and to ensure that he has the opportunity for trade school in order to gain parole. Plaintiff says that change is difficult for him so when he refused housing at the Wayne Scott Unit, he was "G5" (i.e. put in close custody) and sent to the Stiles Unit, where he encountered homosexuals and suffered harassment. The warden would not send him to another unit so he got free-world charges, but these were dropped two years later. However, he complains that he still lost thousands of days in good time and work time. Plaintiff's lawsuit does not name any Defendants at the Stiles Unit or the Wayne Scott Unit.

Plaintiff says that at the Stiles Unit, another inmate assaulted him with a fan motor. The unit closed down two buildings and sent him to the Connolly Unit, where he was placed in a dorm. He states that he stayed there without problems for two years but then he was told by the warden and the unit classification committee that there was a new rule out of Huntsville prohibiting mental health patients from being in the dorms. However, Plaintiff says that he had not been a mental health patient for years.

Plaintiff asserts that Dr. Lannette Linthicum has made policies denying him medical treatment after qualified medical personnel prescribed treatment needed for his illnesses. He says that these prescribed treatments were sent to Huntsville or Galveston, where someone would approve or disapprove it without ever having seen him. He says that he has written letters to Dr. Linthicum, but TDCJ has implemented a policy that inmates cannot write to directors anymore.

Similarly, Plaintiff complains that Senior Practice Manager Debra Gloor of the Connally Unit has not used her position as manager to ensure that Plaintiff receives medical care. He says that he has written requests to her for help with getting a shot of antibiotics, to see her and Dr. Tupa in person, and to have her do lab work, but she has not followed TDCJ policy and forced him back into general population despite his having hundreds of burns and open sores.

According to Plaintiff, the Unit Classification Department at the Connally Unit forces him into cells with drug users and does not follow TDCJ rules concerning disease control and prevention. He also complains about being put into cells with other inmates even though he suffers from a chronic and severe rash.

Turning to the Telford Unit, Plaintiff says that on December 9, 2020, his cellmate tried to kill him with a fan motor. After 20 to 30 minutes, a guard came by doing a count and Plaintiff got her attention, so she got Plaintiff help. According to Plaintiff, Captain Brandy Curl took him to the medical department, but she did not take him to a free world hospital for X-rays or a CT scan, as he says is required by TDCJ policy. Plaintiff complains that Curl failed to drug test his cellmate and did not investigate his cell as a crime scene or take photographs of the blood evidence.

When he was escorted to the medical office, Plaintiff says that the unknown physician who was on duty should have followed TDCJ policy and sent him to a free world hospital for X-rays and a CT scan. Plaintiff says that these tests would have revealed a hole in his head as well as a concussion. Captain Curl and the medical officer at the Telford Unit are the only Defendants in the lawsuit located within the Eastern District of Texas.

**II. Discussion**

A. General Screening of Prisoner Complaints

Twenty-eight U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees and identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts that, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. *Montoya v. FedEx Ground Packaging System Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). This plausibility standard is not akin to a probability requirement, but asks for more than a possibility that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.

Detailed factual allegations are not required, but the claim must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677-78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*. at 678.

A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability, or if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. *Rios*, 444 F.3d at 421.

The Fifth Circuit has explained that while *pro se* complaints are construed liberally, the court is still bound by the allegations of the complaint and is not free to speculate that the plaintiff "might" be able to state a claim if given yet another opportunity to amend the complaint. *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). The court explained as follows:

> For example, if an IFP plaintiff, in amending his complaint through a response to a questionnaire, alleges in his response that he received inadequate medical care while incarcerated, we should not reverse the dismissal of the complaint on the basis that the plaintiff could possibly add facts that would demonstrate that he was treated with deliberate indifference in the medical care that he received. As another example, if an IFP prisoner asserts in the questionnaire response that he has been denied recreation time, we should not reverse dismissal on the ground that he might also be able to assert a claim that the denial was in retaliation for his having filed a grievance.

*Id*. at 97.

B. Deliberate Indifference to Medical Needs

The Fifth Circuit has held that deliberate indifference to a prisoner's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997); *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). In order to show deliberate indifference, the prisoner must show (1) objective exposure to a substantial risk of serious harm, (2) the defendants had subjective knowledge of this substantial risk, (3) the defendants denied or delayed the prisoner's medical treatment despite their knowledge of this substantial risk, and (4) this denial of or delay in treatment resulted in substantial harm. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

Disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference. *Id*.; *see also Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison

official acts with deliberate indifference if he "knows of and disregards an excessive risk to health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")). The Fifth Circuit has explained as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

*Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001).

C. The Telford Unit Defendants

Plaintiff sues two defendants at the Telford Unit - the unknown physician on duty on December 9, 2020, and Captain Brandi Curl. He complains that the unknown physician did not send him to a free world hospital for X rays or CT scans. The fact that Plaintiff did not receive all of the tests he believed appropriate does not itself show deliberate indifference to his serious medical needs. *See Nelson v. Griffin*, 773 Fed. Appx. 217, 218 (5th Cir. 2019) (prisoner's disagreement with the course of his medical treatment and his insistence that he should have received further treatment are not sufficient to support a claim of deliberate indifference) (citing *Gobert*, 463 F.3d at 346). He offers nothing to suggest that the failure to send him to an outside hospital amounted to a refusal to treat him, ignoring his complaints, intentionally treating him incorrectly, or any similar conduct evincing a wanton disregard for his serious medical needs. This allegation fails to state a claim upon which relief may be granted.

Plaintiff also asserts that the failure to send him to an outside hospital violated TDCJ policy. The Fifth Circuit has held that the failure of an official to follow prison policies, without more, does

not violate constitutional minima. *Elizondo v. Livingston*, civil action no. 2:14cv144, 2014 U.S. Dist. LEXIS 141413 at *13, 2014 WL 4960985 (N.D. Tex. 2014) (failure by TDCJ sergeant to take prisoner to a free-world hospital, as prisoner claimed was required by TDCJ regulations, was not a constitutional violation) (citing *Murray v. Mississippi Department of Corrections*, 911 F.2d 1167, 1168 (5th Cir. 1990)); *see also Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000). This allegation fails to state a claim upon which relief may be granted.

While Plaintiff complains that Captain Curl did not take him to an outside hospital, he acknowledges that the physician at the unit did not order him sent to the hospital. Prison officials are entitled to rely on the opinions and conclusions of qualified medical providers. *Petzold v. Rostollan*, 946 F.3d 242, 251 n. 41 (5th Cir. 2019) (citing *Davis v. Phillips*, No. 5:15cv48, 2016 WL 11200220 at *2 (E.D. Tex. 2016), *report and recommendation adopted*, 2017 WL 941925 (E.D. Tex. 2017)). Plaintiff has failed to show that Captain Curl acted with deliberate indifference to his serious medical needs by not taking him to an outside hospital after such a visit was not ordered by the physician whom Plaintiff saw. Even if the failure to take him to an outside hospital after the physician did not order such a visit could be construed as negligence, Plaintiff has not set out a constitutional violation.

Plaintiff also complains that Captain Curl failed to conduct a proper investigation of what he calls the crime scene in his cell. This allegation fails because Plaintiff does not have a constitutional right to have any other person criminally prosecuted or investigated. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990); *Green v. Revel*, 413 Fed. Appx. 698, 700 (5th Cir. 2011) (to the extent the prisoner sought a criminal investigation of his cellmate, he did not have a constitutional right to have a criminal investigation conducted or the offender prosecuted). Plaintiff's allegations against Captain Curl fail to state a claim upon which relief may be granted.

D. The State Defendants

  1. Texas Governor Gregg Abbott

Plaintiff complains that the prison is short-staffed and Governor Abbott is not acting to correct this problem. He fails to show that the Governor of Texas has any personal involvement with the staffing requirements of TDCJ. Instead, this is a claim of *respondeat superior* liability, which does not generally apply in § 1983 cases. *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 419 (5th Cir. 2017); *see also Iqbal*, 556 U.S. at 676 (government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior). However, a supervisor may be held liable if he affirmatively participates in the acts causing a constitutional deprivation or implements unconstitutional policies which causally result in the constitutional injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

Plaintiff has not alleged any facts indicating that Governor Abbott is personally involved with the staffing of TDCJ, nor has he identified any unconstitutional policies causally resulting in a constitutional injury. *See Spiller v. City of Texas City, Texas Police Department*, 130 F.3d 162, 167 (5th Cir. 1997) (in order to satisfy the cause in fact requirement, the plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue or that his injuries resulted from the execution of the policy or custom; the description of the policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts). As such, Plaintiff's allegations are not sufficient to impute liability to the Governor. *Broussard v. Edwards*, 62 F.3d 394, 1995 WL 450113, *1 (5th Cir. 1995) (citing *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)); *Cormier v. Edwards*, No. 17-241, 2018 U.S. Dist. LEXIS 144651 at *6-7, 2018 WL 4053467 (M.D. La. 2018) (state governor cannot be held liable under § 1983 pursuant to a theory of respondeant superior simply because the persons allegedly responsible for the plaintiff's injury, including for example the secretary of the Department of Corrections, were in the governor's employ or under his supervision). Plaintiff has failed to state a claim upon which relief may be granted against Governor Abbott.

### 2. TDCJ Executive Director Bryan Collier

Plaintiff complains that Director Collier has not implemented programs to provide inmates like himself with trade school opportunities. He also complains that drugs, assaults, and murders are out of control, and that a 40-day lockdown was implemented but other inmates continued to obtain drugs, which the guards were bringing in.

As Executive Director of the Texas Department of Criminal Justice, Bryan Collier also is not vicariously liable under § 1983 under any theory of supervisory liability for any actions or omissions by his employees. *Alderson*, 848 F.3d at 419; *Iqbal*, 556 U.S. at 676. Plaintiff has not alleged any facts showing that Director Collier had any personal involvement in or even knowledge of his classification or safety, nor that Collier engaged in wrongful conduct which was causally connected to a constitutional violation. *See Turner v. Lt. Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017).

Although Plaintiff complains of the lack of trade school opportunities, the Fifth Circuit has held that there is no constitutional right to participate in rehabilitation programs or college courses. *Newman v. State of Alabama*, 559 F.2d 283, 291 (5th Cir. 1977), *reversed in part on other grounds in Alabama v. Pugh*, 483 U.S. 781 (1978); *Kerr v. Davis*, No. 6:19cv198, 2020 U.S. Dist. LEXIS 46887 at *10, 2020 WL 1281651 (E.D. Tex. 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 45576, 2020 WL 1275874 (E.D. Tex. 2020), *aff'd*, 855 Fed. Appx. 968 (5th Cir. 2021). This allegation fails to state a claim upon which relief may be granted.

Plaintiff's complaint that the prison is understaffed likewise does not state a claim upon which relief may be granted. In *Hinojosa v. Johnson*, 277 Fed. Appx. 370, 378 (5th Cir. 2008), the plaintiff sued a number of Texas prison officials, including executive director Gary Johnson and TDCJ–CID Director Douglas Dretke, asserting that these officials had actual knowledge of understaffing in the Texas prison system and the resulting substantial risk of harm created. In affirming the dismissal of this claim, the Fifth Circuit stated that the plaintiff had offered nothing to show that the defendants had affirmatively participated in any unconstitutional acts or implemented a policy of understaffing, nor that they were aware that understaffing produced a

9

substantial risk of harm to inmate safety, nor that they had failed to take or even could take reasonable steps in an attempt to rectify the problem.

Similarly, in *Hazel v. Bell*, No. 9:08cv216, 2010 WL 1038743 (E.D. Tex. 2010), *report and recommendation adopted*, 2010 WL 1038733 (E.D. Tex. 2010), the plaintiff complained of understaffing at the Eastham Unit. The district court concluded that while all available evidence showed that the Eastham Unit was in fact understaffed, the courts which have addressed the issue have concluded that evidence of understaffing, without more, is not proof of official policy. *Id.* at *18 (citing *Hood v. Itawamba*, 819 F. Supp. 556, 566 (N.D.Miss.1993); also citing *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D.Tex.1987), *aff'd*, 851 F.2d 359 (5th Cir.1988)). In *Gagne*, the district court observed that evidence of understaffing would become proof of official policy only if more complete funding and staffing were available and it was the intent of the policy-making official not to adequately fund and staff the prison. *Gagne*, 671 F. Supp. at 1135; *accord Doe v. Sullivan County, Tennessee*, 956 F.2d 545, 550 (6th Cir.1992) (evidence of overcrowding or shortage of jailers does not establish a plaintiff's burden in a failure to protect case); *Morgan v. Cabana*, No. 1:07cv1121, 2009 WL 1066294 (S.D. Miss. 2009) (general allegations that defendant jail officials failed to protect the plaintiff because the jail was overcrowded and the facility was understaffed, creating conditions that made an attack by other inmates more likely, did not state a constitutional claim for deliberate indifference to the plaintiff's safety).

Plaintiff has failed to show that Director Collier affirmatively implemented a policy of understaffing or has failed to take reasonable steps to alleviate the problem. In *Hazel*, the district court noted that TDCJ was taking steps to alleviate the understaffing problem by such means as paying bonuses to newly hired guards who accept employment at particularly understaffed units. The TDCJ recruitment bonus program has continued to operate since that time. *See* Texas Department of Criminal Justice Policy Directive PD-54, Recruitment Bonus Program (rev. 3, June 1, 2020) (available online at https://www.tdcj.texas.gov/divisions/hr/hr-policy/pd-54.pdf). Plaintiff has failed to state a claim upon which relief may be granted against TDCJ Executive Director Bryan Collier.

### 3. The Director of the State Classification Committee

Plaintiff complains that the Director of the State Classification Committee forces rules which endanger inmates' lives with regard to cell housing. He says that there are no counselors and disability rules and laws are not followed. Plaintiff states that he is forced into cells with drug users and second-hand smoke and that disease control and prevention is not observed because he should be single-celled until the disease is gone (apparently referring to folliculitis). Plaintiff also refers to policies concerning mental health disabilities, but he does not identify any rules or policies about which he complains. Nor does he offer any specific facts concerning such rules or policies.

In *Youngblood v. State Classification Committee*, No. 4:20cv742, 2021 WL 1198248 (S.D. Tex. 2021), the prisoner sued an unnamed individual on the State Classification Committee who approved a transfer conflicting with the prisoner's medical needs, and that individual's supervisor. The Southern District of Texas determined that the prisoner had failed to show either personal involvement or the implementation of unconstitutional policies by the supervisor. *Id.* at *2. With regard to the individual who had approved the transfer, the Southern District concluded that the prisoner had pled no facts to show that this individual, or anyone else on the State Classification Committee, had acted with deliberate indifference to the prisoner's serious medical needs. *Id.* at *3 (citing *Alexander v. TDCJ, et al.*, 951 F.3d 236, 241 (5th Cir. 2020)).

Likewise, Plaintiff has offered nothing to suggest that the Director of the State Classification Committee acted with deliberate indifference to his serious medical needs. He states no facts to show that the Director of the State Classification Committee was aware of a specific threat to Plaintiff from which the Director could infer that Plaintiff faced a substantial risk of harm, that the Director drew such an inference, or that the Director failed to take action to protect him. *See Lopez v. Davis*, No. 6:19cv593, 2020 U.S. Dist. LEXIS 221609 at *9-10, 2020 WL 6935560 (E.D. Tex. 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 219875, 2020 WL 6888993 (E.D. Tex.2020) (citing *Farmer*, 511 U.S. at 837-38). The mere generalized knowledge that some prisoners may be dangerous is not enough to support a finding of deliberate indifference; even general knowledge about a particular inmate's violent tendencies, without more specific

information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference. *Van Williams v. Samaniego*, No. EP-05-CA-491, 2007 U.S. Dist. LEXIS 105234 at *6, 2007 WL 9701460 (W.D. Tex. 2007); *Lopez*, 2020 U.S. Dist. LEXIS 221609 at *10.

Nor has Plaintiff identified any specific policies allegedly implemented by the Director of the State Classification Committee which causally resulted in a constitutional deprivation. *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). Plaintiff has failed to state a claim upon which relief may be granted against the Director of the State Classification Committee.

### 4. Health Services Director Dr. Lannette Linthicum

Plaintiff contends that Dr. Linthicum created policies which deny him medical care and fails to follow disease control and prevention rules. As such, he claims that she can be liable even if she was not directly involved in enforcing the policies against him. He complains that she will not order her subordinates to give him antibiotic shots even though he suffers from acanthosis, fibrosis, and folliculitis, causing him to have hundreds of pimple-like bumps on his skin. Plaintiff contends that providers will prescribe medicine or treatment but this will be overruled by physicians in Huntsville.

Plaintiff fails to identify any specific policies which he contends were the moving force behind a constitutional deprivation. *See Watson v. Moore*, No. 4:20cv2485, 2023 U.S. Dist. LEXIS 15767 at *12 n.4, 2023 WL 1426882 (S.D. Tex. 2023) (dismissing claim against Dr. Linthicum where the plaintiff pleaded no specific facts about the policies or procedures at issue and made only conclusory assertions about Dr. Linthicum's failure to implement adequate policies) (citing *Porter* and *Iqbal*).

While Plaintiff alleges that a policy was implemented prohibiting prisoners from writing letters to directors and preventing him from writing to Dr. Linthicum, he has failed to show that this policy causally resulted in a constitutional violation. Plaintiff does not contend that he lacks access to the prison grievance procedure, the mechanism whereby he may present complaints or concerns to prison officials, and in any event, he would have no constitutional right to have any complaints he put in letters to Dr. Linthicum resolved to his satisfaction. *Geiger v. Jowers*, 404

12

F.3d 371, 374 (5th Cir. 2005); *see also Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) (high-ranking prison officials cannot be expected to intervene personally in response to every letter they receive). Plaintiff has not shown any harm in the fact that he cannot write letters directly to the Director of the Health Services Division of TDCJ.

Nor is Dr. Linthicum liable under any theory of *respondeat superior* for the alleged actions of her subordinates in overruling prescriptions made for Plaintiff by unit providers. Plaintiff has failed to state a claim upon which relief may be granted against Dr. Linthicum.

E. The Connolly Unit Defendants

Plaintiff names two Defendants at the Connolly Unit - an unknown head of classification and senior practice manager Debra Gloor. The Connolly Unit is located in Karnes County, which is within the territorial jurisdiction of the Western District of Texas, San Antonio Division.

Twenty-eight U.S.C. §1391(b) reads as follows:

> A civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Under 28 U.S.C. 1404(a), for the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it could have been brought. Such a transfer may be done *sua sponte* and is reviewable only for an abuse of discretion. *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989). The Court has considered the circumstances and has concluded that the interest of justice would best be served by severing Plaintiff's claims against the Defendants at the Connolly Unit and transferring these claims to the proper district and division.

RECOMMENDATION

It is accordingly recommended that the Plaintiff's claims against the Defendants Debra Gloor and the unknown classification chief at the Connolly Unit be severed from this lawsuit and transferred to the United States District Court for the Western District of Texas, San Antonio

Division, for such other and further proceedings as that Court may believe appropriate. It is further recommended that the remainder of the claims in this lawsuit be dismissed without prejudice for failure to state a claim upon which relief may be granted.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found.

An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 5th day of February, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE